United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| SARAH KIM SIU CASTILLO,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 16-cv-01357-NJV<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 16, 21 |

Plaintiff Sarah Kim Siu Castillo seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the Administrative Law Judge's ("ALJ's") unfavorable decision was denied by the Appeals Council. The ALJ's decision is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 6 & 10). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and remand this action for further proceedings.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE MEDICAL EVIDENCE

*Mental Impairments:*

Plaintiff was a special education student with a learning disability and a reading disorder, and suffers from a low IQ. (AR 551). The ALJ found that Plaintiff suffers the severe mental impairments of borderline intellectual functioning and a bipolar disorder. Plaintiff also suffered episodes of post-partum psychosis, which treating psychiatrist David Villasenor, M.D., described as "no sleep, bizarre behavior, wandering, talking to herself, and hallucinations . . . which lasted for a week at a time." (AR 559). Plaintiff has been prescribed psychotropic medications including Abilify. (AR 21). Dr. Villasenor opined that Plaintiff was fairly impaired and would not likely work effectively. (AR 551). In May of 2013 a state agency non-examining psychologist opined that Plaintiff could sustain concentration, persistence, and pace for simple tasks only and required a setting with low social demands and public contact. (AR 22).

*Physical Impairments*:

Plaintiff suffers the severe physical impairments of post-partum cardiomyopathy, and obesity. Plaintiff wears an external pacemaker that slows her heart rate (AR 20) after she suffered cardiac arrest a few days after her son was born (AR 111). She was resuscitated at the scene by a police officer. *Id*. A non-examining state agency doctor opined that Plaintiff could perform light work. (AR 22).

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically

2

determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. AR 15-24.

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AR 17.

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: post-partum cardiomyopathy, borderline intellectual functioning, obesity, and bipolar disorder. AR 17.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv),(e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 18. Next, the ALJ found that Plaintiff had the residual functional capacity to

3

1  perform light work with several exertional and non-exertional limitations. AR 19.

2  At Step Four, the ALJ found that Plaintiff could not perform her past relevant work. AR 23.

4  At Step Five, after consulting with a vocational expert, the ALJ found that there were a significant number of jobs that Plaintiff could perform in the national economy. AR. 23. Accordingly, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act," through the relevant time period. AR 24.

## DISCUSSION

Plaintiff raises three challenges to the ALJ's decision, arguing that: (1) "[t]he ALJ committed harmful legal error by failing to properly analyze Listing 12.04 as required at Step Three of the evaluation process;" (2) "[t]he ALJ committed harmful legal error by improperly giving limited weight to the treating psychiatrist's opinion;" and (3) "[t]he ALJ committed harmful legal error by failing to fairly and fully develop the medical record." Pl.'s Mot. (Doc. 16) at 7, 12, & 16.

Plaintiff's claims are all interrelated in that the error Plaintiff alleges at Step Three relates to the ALJ's consideration (or lack thereof) of treating physician Dr. Villasenor's opinion, the error alleged when making the RFC determination is the improper discounting of that opinion, and the failure to develop the record is in relation to the ALJ's failure to order a consultative examination after rejecting Dr. Villasenor's opinion. Defendant defends the alleged errors by arguing that the ALJ was not obligated to discuss Dr. Villasenor's opinion at Step Two because it was an opinion that was later rejected and that because the rejection was proper, there was no need to further develop the record. Thus, the court will decide the seminal issue, which is whether the ALJ erred in the assignment of weight to Dr. Villasenor's opinion.

"'As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Thus, an ALJ may reject a treating source's opinion "only 'by providing specific and legitimate reasons that are supported by substantial evidence.'" *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015)

4

(quoting *Garrison*, 759 F.3d at 1012).

The ALJ gave limited weight to the opinions of Dr. Villasenor. With regard to the mental impairment questionnaire prepared by Dr. Villasenor, the ALJ afforded the opinions limited weight because "the [plaintiff] has been seen quarterly since March 2013 and the form was completed on May 2014, indicating a total of no more than five visits at the time the form was completed . . . The extreme limitations noted are not consistent with the evidence as discussed herein. The form also states the [plaintiff] does not need ongoing therapy, inconsistent with the opinion that she has extreme limitations, and is not suicidal . . . . It also notes side effects from her medication that are not reflected in the treating records." (AR 22). The court finds the ALJ's treatment of Dr. Villasenor's opinions problematic for several, but not all, of the reasons advanced by Plaintiff.

First, Plaintiff argues that the ALJ erred in assigning Dr. Villasenor's opinion less weight based on the number of visits. As to this issue, Plaintiff acknowledges that "[t]here is no magic number of visits required to establish a treatment relationship." Pl.'s Mot. (Doc. 16) n. 5. However, the issue is not whether a treatment relationship had been established in this case, the ALJ acknowledged that there was. Rather, it is the weight afforded the opinion based on the number of visits. The frequency of examination is one of the factors an ALJ considers when according weight to be given a treating physician when their opinion is not controlling. *See* § 404.1527(c)(2)–(6). Thus, the ALJ's consideration of the number of visits between Plaintiff and Dr. Villasenor was proper.

Plaintiff next argues that the ALJ erred in assigning the two state agency non-examining physicians' opinions controlling weight, above that of Dr. Villasenor's opinion. This argument essentially goes to the ALJ's reasoning that Dr. Villasenor's opinions "are not consistent with the evidence as discussed herein." (AR 22). That evidence, "as discussed herein," must be a reference to the state agency physicians, as no other medical sources are discussed by the ALJ in reference to mental capacity. The ALJ's lack of specificity as to what other evidence discussed herein falls short of the requirement that the ALJ point to specific evidence.

Further, as Plaintiff points out, "[t]he state agency physicians' reports were prepared in

January 2013 and May 2013, prior to the October 24, 2013 and May 27, 2014 opinions from the treating psychiatrist. (AR 22, 65-66, 89-92, 591-592, 659-663)." Pl.'s Reply (Doc. 22) at 7. Indeed, those non-examining opinions were prepared before the whole of the quarterly treatments of Dr. Villasenor which began in March of 2013. To the extent then, that the opinions of the non-examining physicians form the basis for the ALJ's "evidence discussed herein" as it relates to mental impairments (and the court can find no other meaning of that term), the ALJ did error in relying on those opinions to discount the treating physician. It is error for an ALJ to reject the opinion of a treating physician in favor of the opinions of non-examining physicians, where their opinions were not informed by the whole medical record, including more recent treatment notes and diagnoses. *See e.g. Castellucci v. Colvin*, No. C13-04450 LB, 2014 WL 4371424, at *19 (N.D. Cal. Sept. 3, 2014).

With regard to mental impairment assessment form completed by Dr. Villasenor in May of 2014, the ALJ stated that "the form also states the [plaintiff] does not need ongoing therapy, [which is] inconsistent with the opinion that she has extreme limitations, and is not suicidal." The ALJ used this "inconsistency" as a basis for giving Dr. Villasenor's opinion little weight. Plaintiff accurately reproduces this portion of the form as follows:

> Does this patient also have therapy from a therapist supervised by you?
> Yes ___ No X_
> If yes, who_____ Starting date:_____
>
> Do you expect this patient to need ongoing therapy from the above referenced person? Yes ____ No X
>
> (AR 659).

Pl.'s Mot. (Doc. 16) at 15. Plaintiff also accurately points out that the plain meaning of the form is that "Plaintiff does not need ongoing treatment from 'the above referenced person.' (AR 659) Dr. Villasenor answered no, because the question was '[d]o you expect this patient to need ongoing therapy from the above referenced person?' And, there was no person referenced above. (AR 659)." *Id*. The ALJ's finding that the form was inconsistent on the basis that Dr. Villasenor indicated that Plaintiff would not need ongoing therapy is not legitimate and not supported by substantial evidence.

6

The final basis for the ALJ's rejection of Dr. Villasenor's opinion in favor of the non-examining physicians was that Dr. Villasenor's notations of the side effects of Plaintiff's medications were not reflected in the treatment record. Plaintiff points the court to Dr. Villasenor's notation that he had reviewed Plaintiff's medical records and that those notes would have included the side effects of fatigue as noted in December of 2012 (AR 614-15) and August of 2013 (AR 610). It is unclear as to whether or not those notes formed the basis of Dr. Villasenor's opinion. It is equally unclear as to whether the ALJ was referring to Dr. Villasenor's treatment record or the treatment record as a whole. In any event the court is not so concerned with this finding by the ALJ as it is with the ALJ's overall finding as to Dr. Villasenor's opinion.

Even assuming that the ALJ's rejection of Dr. Villasenor's opinion was proper, the ALJ's reliance on the opinions of two non-examining physicians, neither of whom had the benefit of reviewing the records of the treating physician, leaves the record devoid of a medical opinion concerning the latest treatment of Plaintiff. This leads to Plaintiff's argument that the ALJ failed to properly develop the record by ordering a consultative examination. The court agrees that with the opinion of the treating physician discounted and reliance on non-examining opinions that do not take the entire medical record into account the ALJ's opinion lacks substantial evidence. The issue is further complicated by the ALJ's use of her rejection of Dr. Villasenor's opinion at Step 4 to exclude the opinion at the Step 3 determination.

Accordingly, the court finds it appropriate to remand this matter to the ALJ for a proper evaluation of Dr. Villasenor's opinion and to order a consultative examination if the ALJ deems it necessary.

//
//
//
//
//
//

**CONCLUSION**

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment and REMANDS this matter for further proceedings in accordance with this Order.

A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: August 9, 2017

NANDOR J. VADAS
United States Magistrate Judge